**Entered on Docket**
**October 05, 2015**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: October 5, 2015**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                               ) Bankruptcy Case
                                    ) No. 14-30626 DM
MARCELO VILLANUEVA SANCHEZ,         )
                                    ) Chapter 7
                  Debtor.           )
_____)
ATTILA CARGO EXPRESS, INC.,         ) Adversary Proceeding
                                    ) No. 14-3150 DM
                  Plaintiff,        )
                                    )
v.                                  )
                                    )
MARCELO VILLANUEVA SANCHEZ,         )
                                    )
                  Defendant.        )
_____)
```

**MEMORANDUM DECISION ON COMPLAINT TO DETERMINE NONDISCHARGEABILITY**

I.   INTRODUCTION

The court conducted a trial on September 28 and 29, 2015, on the Complaint to Determine Dischargeability of Debt ("Complaint") filed by Attila Cargo Express, Inc. ("Attila") against chapter 7 debtor Marcelo Villanueva Sanchez ("Sanchez").

Having considered the evidence presented and the arguments of counsel, the court determines that a portion of Attila's claim against Sanchez is nondischargeable; the balance of its claim is discharged.

## II. FACTS[1]

Attila is in the business of freight forwarding, primarily handling the shipping of various items of personal property from the San Francisco Bay Area to the Philippines. In a typical transaction a client of Attila designates items to be shipped; Attila arranges for the pickup and delivery of those items to its South San Francisco warehouse where they are either held intact (such as an automobile) or placed in boxes. When Attila has sufficient number of items or boxes to justify contracting with a shipping company, it arranges for a container to be loaded with the items it is holding for its clients. The container is then placed aboard a ship and when it arrives in the Philippines, Attila arranges for its consignees to obtain the property being sent to them.

Attila had been in business for several years when, in 2007, it hired Sanchez to be its general manager in San Francisco. Sanchez is the spouse of a lifelong friend of one of Attila's owners. The owners of Attila believed he was trustworthy and could be relied upon as a family member, notwithstanding his lack of experience in the freight-forwarding business.

Sanchez served in his general manager capacity from 2007 until mid-2012 when he was terminated. The reasons for his termination give rise to Attila's various claims against him.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

While employed by Attila, Sanchez began doing business under the dba Silverline Logistics ("Silverline"), and later through Cargodoor LLC ("Cargodoor"). Both Silverline and Cargodoor engaged in freight forwarding in the same manner, and with many of the same customers as Attila. Those two entities also engaged in some business activities unrelated to Attila's normal business.

Attila filed suit in state court against Sanchez and, before that matter went to trial, he filed his chapter 7 case on April 24, 2014.

In the Complaint, Attila seeks recovery under section 523(a)(2)(A) (False Pretenses or Representations or Actual Fraud), section 523(a)(4) (Embezzlement and Larceny) and section 523(a)(6) (Willful and Malicious Conversion).[2]

III. DISCUSSION

**A. Types of Attila's Claims.**

Attila's claims against Sanchez fall into the following categories:

Unauthorized salary raises ("**Salary claim**") - $9,154.72 (Exhibit 7)

Unauthorized use of Attila funds ("**Use of funds claim**") - $7,776.34 (Exhibit 8). Of this total, $6,659.22 was actually diverted to Sanchez's own uses. Attila paid the balance, $1,117.12, to AT&T for phone equipment acquired by Sanchez.

Unauthorized personal vehicle charges ("**Vehicle claim**") -

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

-3-

$3,847.29 (Exhibit 9). At trial Sanchez conceded this liability, but not its nondischargeability.

Unauthorized personal credit card charges ("**Credit card claim**") - $7,000.48 (Exhibit 10). At trial Sanchez conceded this liability, but not its nondischargeability.

NSF/Overdraft fees incurred on various Attila bank accounts ("**NSF claim**") - $6,390.00 (Exhibit 11). At trial Sanchez conceded this liability, but not its nondischargeability.

Revenue diverted to Cargodoor in 2013 & 2014 ("**Post-termination Cargodoor claim**") - $122,760.51 (Exhibit 12).

Revenue diverted to Silverline in 2012 (**Silverline claim**") - $100.260 (Exhibit 12).

Cargodoor and Silverline invoices to Attila clients from December, 2012 until July, 2014 ("**Post-termination invoice claim**") - $26,334.55 (Exhibits 13, 14 & 15).

Cargodoor bank deposits from Attila clients from July, 2012 until March, 2013 ("**Cargodoor bank claim**") - $107,587.87 (excluding $74,984.56 received from other than Attila clients) (Exhibit 16).

Silverline bank deposits from Attila clients from February, 2012 until June 25, 2012 ("**Silverline bank claim**") - $47,085.95 (excluding $8,416.40 received from other than Attila clients) (Exhibit 17A).

Various deposits to Sanchez accounts from Attila clients ("**Pre-termination claim**") - $145,049.70 (Exhibits 18 & 19).

A shipment for Attila client Alvin Tan in November, 2010 for

-4-

which Mr. Tan paid Sanchez ("**Tan claim**") - $3,000 (Exhibit 30) .

Expenses incurred by Attila for services rendered to Mr. Romero-Salas ($760.17) plus a $30 invoice from Silverline to Mr. Romero-Salas ("**Romero-Salas claim**") - $790.17 (Exhibit 31).

A payment for a shipment made by Attila for Pio Sanchez, a client, in April, 2012 ("**Pio claim**") - $1,659.59 (Exhibit 40).

An out of pocket expense for shipment for an Attila client, Angel Ignacio in 2011 **("Ignacio claim"**) - $323 (Exhibit 42).

Various payments received by Sanchez from Attila clients in 2010 and 2011 ("**Sanchez claim**") - $9,145.30. (Includes Ignacio payment of $323)(Exhibit 43).

Silverline invoices to Attila clients in December, 2012 and January, 2013 ("**Silverline invoice claim**") - $1,443.97 (Exhibit 45)[3].

**B. Elements of Nondischargeable Claims.**

As acknowledged by Attila in its trial brief, the elements of nondischargeability under § 523(a)(2) are a misrepresentation, fraudulent omission or deceptive conduct; knowledge of the falsity or deceptiveness by the debtor; intent to deceive, justifiable reliance by the creditor; and damage to the creditor. This is basic hornbook bankruptcy law and no citations are necessary here.

To prove nondischargeability under § 523(a)(4), the creditor must establish that the debtor was a fiduciary; in the alternative it may prove larceny or embezzlement. To constitute embezzlement,

---

[3]In the demonstrative exhibit Attila's counsel presented at trial, the dates of these two invoices were incorrectly shown as "9/10 -11/11."

-5-

property must be in the possession of the non-owner rightfully; the non-owner must appropriate the property for use other than for which it was entrusted; and circumstances indicating fraud are essential. *Transam Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551 (9th Cir. 1991).

For conversion to be nondischargeable under § 523(a)(6), the plaintiff must prove, as separate elements, that the conduct was willful and malicious. "Willful" requires a subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur. *Carillo v. Su (In re Su),* 290 F.3d 1140 (9th Cir. 2002). To be malicious, there must be a wrongful act, done intentionally, which necessarily causes injury and is done without just cause or excuse. *Barboza v. Newform Inc. (In re Barboza)*, 545 F.3d 702 (9th Cir. 2008). There are ample cases that establish that a willful conversion by a debtor can result in nondischargeability under this section. For example,

> "Willful and malicious" refers to "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse." *In re Cecchini, 780 F.2d 1440, 1443 (9th Cir.1986)* (quoting 3 L. King, Collier on Bankruptcy § 523.16 at 523-118 (15th ed. 1983)). Our court has adopted the concept that "the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury," constitutes a willful and malicious injury within the meaning of the § 523(a)(6). *Cecchini,* 780 F.2d at 1443 (citing 3 Collier on Bankruptcy, P523.15[1] at 523-120 (15th ed. 1983) (citations omitted)).

*In re Littleton* (9th Cir. 1991) 942 F.2d 551, 554.

**C. General Application of Legal Principles to Attila's Claims.**

Case: 14-03150    Doc# 26    Filed: 10/05/15    Entered: 10/05/15 15:31:10    Page 6 of 11

As a preliminary matter, all of Attila's claims under § 523(a)(2) must fail. It has not established that any of Sanchez's conduct involved knowing deceitful representations or omissions by him and a corresponding justifiable reliance by plaintiff.

Attila also did not prove that Sanchez was a fiduciary or that he committed larceny. Accordingly, the only claims that might survive under § 523(a)(4) are those for embezzlement. Here the distinction between embezzlement and some of the instances of conversion by Sanchez is minimal. Attila has proven that several of its claims are a result of Sanchez's intentional and knowing conversion, consistent with *Littleton*.

**D. The dischargeability and nondischargeability of Attila'a claims.**

The Salary claim is dischargeable. Sanchez understood that his pay was to be $3,000 a month or $1,500 per pay period. When Attila changed from in-house payroll calculations to a payroll service, for the first time proper withholdings were taken. Twice during his employment, Sanchez raised his own salary, but in neither time did he increase payments beyond the "takehome pay" of $3,000 per month. From the evidence presented by Attila, Sanchez's conduct was not done with subjective intent to cause harm. In fact, he acted with just cause or excuse, believing that he was entitled to maintain a salary level consistent with what he understood were the terms of his employment.

The portion of the Use of funds claim that pertains to phone equipment that resulted in a liability of Attila to AT&T of

-7-

$1,117.12 is dischargeable. The most that Attila has demonstrated is that Sanchez, in his capacity as Attila's general manager, may have ordered the phones. It did not prove that he knowingly embezzled or converted any money in connection with the AT&T charges.

The remaining portion of the Use of funds claim, $6,659.22, was knowingly converted by Sanchez. He diverted the money without Attlia's knowledge or consent. That portion is nondischargeable under § 523(a)(6).

The Vehicle claim was incurred without justification and Sanchez intentionally helped himself to the Attila funds. That was conversion. That claim is nondischargeable under § 523(a)(6).

The Credit card claim falls into the same category as the Vehicle claim. Sanchez knew that payment of personal expenses was unauthorized. His subsequent acknowledgment of the inappropriateness of those payments does not give rise to a newly substituted debt that replaces his liability for converting those funds in the first place. *Archer v. Warner* 538 U.S. 314 (2003).

The NSF claim is dischargeable. Sanchez did not obtain any money of Attila by permitting it to incur those charges. The most that can be said was that Sanchez was careless in his management of the business and Attila was less than diligent in its oversight of his management activity. That amount will be discharged.

The Post-termination Cargodoor claim, the Post-termination invoice claim and the Cargodoor bank claim are all dischargeable. Despite Attila's counsel's protestations that Sanchez somehow

-8-

Case: 14-03150    Doc# 26    Filed: 10/05/15    Entered: 10/05/15 15:31:10    Page 8 of 11

stole Attila's customer list, it did not prove the existence and the improper taking of such a list.  Further, Attila has not convinced the court that Sanchez would have any liability (whether dischargeable or not) for money that either he or his dba, Silverline, or his affiliated entity, Cargodoor, earned from clients of Attila after mid-2012 when Sanchez was no longer employed by Attila.

The Silverline claim is based upon a 2012 Schedule C to Sanchez's tax return that reported gross receipts of $100,260.00 during calendar year 2012.  Surprisingly, Sanchez did not provide any defense to explain when and how those funds were received. The court will infer, therefore, that that amount came from Attila clients while Sanchez was employed and that therefore the revenue diverted to Silverline was a knowing conversion of Attila's accounts receivable.  That claim is for conversion and is nondischargeable under § 523(a)(6).

The Silverline bank claim consists of receipts from various Attila clients and from the evidence presented the court can infer than Sanchez knowingly received those payments and deposited them into his Silverline JPMorgan Chase account.  Again, Sanchez perhaps could have proven that the receipts were for other than freight forwarding by those clients but he did not do so.  His diversion of those funds was intentional and a knowing conversion of Attila's property. The same is so with respect to the Pre-termination claim, all of which consists of deposits to various Sanchez accounts on collections from Attila clients.  Those claims

Case: 14-03150    Doc# 26    Filed: 10/05/15    Entered: 10/05/15 15:31:10    Page 9 of 11

are nondischargeable under § 523(a)(6).

The Tan claim will be disallowed in its entirety because it is also included in the Pre-termination claim.[4]

The Romero-Salas claim will be discharged because, like the obligations Attila owed to AT&T, it simply represents expenses incurred by Attila; there was no embezzlement or conversion of any of those funds.

The same is true for the Pio claim. Attila has not shown how or whether any funds it was otherwise entitled to were diverted or converted for Sanchez's own account.

The Ignacio claim will be disallowed as it is included as part of the Sanchez claim.[5]

The Sanchez claim not only includes the Ignacio claim, but it includes at least two additional charges that Attila included in its Pre-termination claim. Those duplications are a $2,983.13 receipt from Michael Aguilar on or about March 15, 2012 and $2,974.25 received from Neil Watkins on or about August 12, 2011.[6] Accordingly, the Sanchez claim is reduced to $2,844.72 and will be nondischargeable under § 523(a)(6) because it represents additional amounts knowingly converted by Sanchez.

The Silverline invoice claim will be disallowed for the same reason the court has disallowed the Post-termination invoice claim.

---

[4]The court discovered this duplication; Sanchez should have.

[5]The court discovered this duplication; Sanchez should have.

[6]The court discovered these duplications; Sanchez should have.

To recap, the following claims Attila has against Sanchez will be nondischargeable in this chapter 7 case:

| Claim | Non-Dischargeable Amount |
|---|---|
| Use of funds | $6,659.22 |
| Vehicle | $3,847.29 |
| Credit card | $7,000.48 |
| Silverline | S100,260.00 |
| Silverline bank | $47,085.95 |
| Pre-termination | $145,049.70 |
| Sanchez | $2,844.72 |
| **Total** | **$312,747.36** |

IV. DISPOSITION

Counsel for Attila should serve and upload a form of judgment in its favor against Sanchez in the amount of $312,747.36, which amount will be determined to be nondischargeable for the reasons set forth in this Memorandum Decision on Complaint to Determine Nondischargeability.

\* \* \*END OF MEMORANDUM DECISION \* \* \*